OWINGS *et al.*, *Appellants*, v. McKENZIE *et al.*

Division One, March 10, 1896.

1. **Deed of Trust**: CESTUI QUE TRUST: CONCURRENT REMEDIES. A *cestui que trust* in a deed of trust given to secure a note may, at his option, bring a personal action on the note or a suit to foreclose the equity of redemption, or may bring suit for possession of the premises after condition broken.

2. ———: NOTE: EXTENSION OF TIME. An extension of time given on a note by the creditor to the debtor must, to be binding, be in a form which will estop the creditor from bringing suit before the expiration of the period of extension.

3. ———: NOTES, EXTENSION OF TIME ON ONE: SURETY: PRIORITY. The extension of the time of payment of one of two notes secured by the same deed of trust, without the consent of one bound as surety on both notes, and by which he is discharged, does not affect its priority over the second note in the proceeds of the mortgaged property.

4. ———: ———. Nor will such extension of the first note have the effect of extending the second one though both have matured, by the terms of the deed of trust, because of default in payment of one.

5. ———: NOTE: MATURITY: DEFAULT OF PAYMENT. A promissory note is not affected as to the date of its maturity by the terms of a deed of trust securing it, declaring that it shall become due on default of payment of another note, except for purposes of enforcing the mortgage security. *Noell v. Gaines*, 68 Mo. 649, overruled.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED AND REMANDED.

*Peak & Ball* for appellants; *W. M. Williams* and *R. L. Yeager* of counsel.

(1) The relation of principal and surety exists as between the maker of the notes and the grantees who

assume and agree to pay.    As to the holder of the notes, both maker and grantees are principal debtors and an extension does not release the original debtor. *Ins. Co. v. Mayer*, 8 Mo. App. 18; *Brown v. Kirk*, 20 Mo. App. 524; *Corbet v. Waterman*, 11 Iowa, 86; *Shepherd v. May*, 115 U. S. 505; *Circullu v. Heinandez*, 103 U. S. 105; *Rey v. Simpson*, 22 How. 341; *Waters v. Hubbard*, 44 Conn. 340; *Boardman v. Laribee*, 51 Conn. 39; *Crawford v. Edwards*, 33 Mich. 353; *James v. Day*, 37 Iowa, 164; *Marsh v. Pike*, 1 Sanford, Ch. 210.    (2) Whenever a debt is due, the debtor is bound to pay on demand. The note in suit was not "due" on default in the payment of the first note, because the debtor was only bound to pay the note due by its face.    The maturity of both notes was only for the purpose of enforcing the deed of trust and disposing of the collateral.    *Morgan v. Martin*, 32 Mo. 438; *Hurck v. Erskine*, 45 Mo. 484; *Wheelan v. Riley*, 61 Mo. 565; *Phillips v. Bailey*, 82 Mo. 639; Hough, J., *in Noell v. Gaines*, 68 Mo. 649.    (3) In any case the default would not have the effect of making the other note due for any purpose except at the election of the holder.    She did not, and was not bound to, declare it due.    *Noell v. Gaines*, 68 Mo. 649; 1 Jones on Mortgages [4 Ed.], sec. 742, and cases cited.    (4) Each note is a separate and distinct cause of action, capable of separate ownership, whether secured or not; and the rule that all papers composing a part of one and the same transaction are to be regarded as one entire contract does not apply to the case of a promissory note secured by a deed of trust.    It would destroy all negotiable paper, if the rule applied.    *Hagerman v. Sutton*, 91 Mo. 519; *Mayes v. Robinson*, 93 Mo. 114; *Jennings v. Todd*, 118 Mo. 296; *Horn v. Bennett*, 34 N. E. Rep. 956.

*Cook & Gossett* and *Warner, Dean, Gibson & Mc-Leod* for respondents.

(1) The grantee in a deed to property incumbered by a mortgage or deed of trust, who, by the terms of the conveyance to him, assumes the payment of the indebtedness secured by the mortgage or deed of trust, becomes, as soon as the mortgagee knows of the arrangement, primarily liable to the mortgagee for the debt for which the mortgagor was already liable, and the relation of the grantor and grantee toward the mortgagee, as well as between themselves, is thenceforth that of principal and surety for the payment of the mortgage debt, and any agreement for the extension of the time of payment of the debt, made between the mortgagee and the grantee, or any alteration of the original contract, releases the grantor from liability upon the debt.   Jones on Mortgages [4 Ed.], sec. 741; Pomeroy's Equity Jurisprudence, sec. 1206; *Ins. Co. v. Hanford*, 143 U. S. 187; *Calvo v. Davies*, 73 N. Y. 211; *Jester v. Sterling*, 25 Hun, 344; *Fish v. Hayward*, 28 Hun, 456; *Paine v. Jones*, 76 N. Y. 274; *Bank v. Wood*, 56 Mo. App. 214; *George v. Andrews*, 60 Md. 26; *Stove Works v. Caswell*, 48 Kan. 689.   (2) Where, even, the land is conveyed subject to the mortgage, the grantee incurring no personal liability thereon, if the mortgagee, by a valid agreement with the grantee, extends the time of payment of the mortgage debt without the consent of the mortgagor, the mortgagor is discharged from liability to the mortgagee to an amount equal to the value of the land at the time of such extension. *Murray v. Marshall*, 94 N. Y. 611; *Spencer v. Spencer*, 95 N. Y. 353.   (3) It is immaterial whether the extension may or may not prejudice the surety.   If made without his consent he is discharged.   *Sloan v. Latimer*, 19 S. E. Rep. (S. C.) 491.   (4) The notes and deed of

trust formed part of one and the same transaction, and must be construed together. Pingrey on Mortgages, sec. 1534; Jones on Mortgages [4 Ed.], sec. 1179; *Gregory v. Marks*, 8 Biss. 44; *Schoonmaker v. Taylor*, 14 Wis. 313; *Buchanan v. Ins. Co.*, 96 Ind. 520. (5) The note here sued on came due for all purposes. *Noell v. Gaines*, 68 Mo. 649; *Detwiler v. Breckincamp*, 83 Mo. 45. (6) With respect to payment, the surety's rights are exactly those of the principal debtor. With respect to the rights he acquires by such payment to the creditors, they are exactly those, by subrogation, of the creditor. If the creditor has extended a debt and the surety pays it before due, he can not sue the debtor until due, and an extension, for that reason, without his consent, releases him. *Benne v. Schnecko*, 100 Mo. 250; *Dozier v. Lewis*, 27 Miss. 679; Brandt on Suretyship, p. 261; *Allison v. Sutherlin*, 50 Mo. 274; *Mahew v. Boyd*, 5 Md. 102. (7) The law is well settled that where, upon a view of the whole record, it is manifest that the judgment is for the right party, it will not be reversed even if errors may have intervened. *Bassett v. Glover*, 31 Mo. App. 150; *Kartjorn v. Seimers*, 29 Mo. App. 271; *Vaughn v. Daniels*, 98 Mo. 230.

ROBINSON, J.—This is a suit by plaintiff, the original payee in a note secured by deed of trust on land, for a personal judgment against the maker thereof and his grantees who purchased the property securing the note agreeing as a part of the consideration for such conveyance, to assume the payment of the notes in suit together with another note mentioned in the deed of trust. We give the following facts of the case (as same appear in appellant's statement), that the origin, history, and nature of the transaction between the contending parties may be fully understood.

Plaintiff, Mrs. Owings, in November, 1886, sold a tract of land to defendant McKenzie; and for a balance of the purchase money McKenzie gave her his two promissory notes for equal amounts, one maturing in two years and the other in three years after date, secured by a deed of trust on the property. Before the maturity of these notes, McKenzie sold the property to his codefendants, Tilhof, Green, and Muehlbach, and they in turn sold to Canine, both deeds being made subject to the prior deed of trust, and the respective grantees assumed and agreed to pay the notes as a part of the consideration of the conveyances. The deed of trust contained the usual provision that, if default be made in the payment of either note, or any interest thereon, according to the terms thereof, then both of said notes should become immediately due and payable, and the trustee, at the request of the legal holder of said notes, might proceed to sell, etc. At the time the two year note matured, Canine was the owner of the property, and shortly thereafter, by agreement between him and Mrs. Owings, this note was extended for three months, but there was no valuable consideration for this extension. After its expiration, the time of payment of the unpaid balance on this note was again extended three months, to May 27, 1889, in consideration of one per cent additional interest.

After both notes had matured by their face, the trustee, at the request of plaintiff, was about to sell the property, when Canine, in order to stop the sale, agreed to pay, on account of costs and accumulated interest, the sum of $500, and at the time put up $100 of the amount. Plaintiffs, after waiting for a week for the balance of said sum, again ordered a sale, which was made in May, 1891. All of the defendants were represented at the sale. The proceeds of the sale

paid the costs, paid the two year note in full, and paid a part of the three year note. This suit was brought on the three year note, to recover the unpaid balance thereof.

Defendants' answers pleaded an extension by agreement between plaintiff and Canine of both notes, for a definite time, and for a valuable consideration, without defendants' knowledge or consent. Also that the property was much more valuable at the time the notes were given and the extension made on the first or two years note than it was at the time the property was sold under the deed of trust.

On this issue the trial court refused to hear defendant's evidence. The record does disclose, however, that the property was originally sold by McKenzie to Green and Tilhof for the sum of $14,000 and of this sum the two notes of $3,760 each were a part of the consideration, and that at the trustee's sale the property only brought $3,500. The evidence showed an extension, as stated, of the two year note, but that no agreement was ever made relative to the extension of the note in suit.

One instruction for plaintiff was refused to the effect, "that although the two year note was so extended, yet this did not relieve the defendants from liability on the note in suit;" and for the defendants McKenzie, Tilhof, and Muehlbach who alone filed answers, a corresponding instruction stating the proposition in the affirmative, as follows, was given:

"2. The jury are instructed that if you believe from the evidence that the note sued on and the deed of trust given to secure the same and offered in evidence with the other note therein described were executed each as a part of and all constituting one and the same transaction, and that the plaintiff, Prudence C. Owings, knew of the conveyance of the land in the

deed of trust described by defendant McKenzie, to defendants Tilhof and Muehlbach and William Green, and of said defendants and said Green to R. B. Canine, and of the assumption of payment of the indebtedness by said respective grantees in said deeds contained, and without their consent, for a valuable consideration for the payment of additional interest, by agreement with Canine extended the time for a certain or definite time for payment for either or both of said notes, then you will find for the defendants who did not consent to such extension."

On the issues thus presented by the instructions the jury returned a verdict for defendant on which in due time judgment was rendered and to reverse which this appeal is prosecuted.

Several very interesting and vexed questions in the adjudications of this court have been raised and discussed by the learned counsel in the able and elaborate briefs filed herein, such as, "what is the relation of the holder of the notes, to the maker and the respective grantees, and what the effect of an extension without notice on the original maker and subsequent grantees," the plaintiff contending that as to the holder of the notes, both maker and grantee are principal debtors, and that, as such, an extension of time granted to one by the holder of the notes will not operate to release the others; the defendant contending that in such cases as between the parties the purchaser, having assumed the payment of an existing mortgage, thereby becomes the principal debtor, and the mortgagor and maker of the note are securities for the debt merely, and that an extension of time of payment of the mortgage debt by an agreement between the holder of it and the purchaser without the concurrence of the mortgagor discharged him and all subsequent purchasers under him from all liability. Also the question as to

what extent notes and deeds of trust or mortgages given to secure them shall be construed as one instrument. And what the effect of a provision in a deed of trust securing a series of notes "that the failure to pay the first will mature all others of the series" will have upon the last of the series, as to questions of rescission, demand, and notice, as if matured by expiration of time as indicated on their face.

Under the particular facts of this case we think it can be disposed of without a full review of all the points raised by the learned counsel and we will discuss only such questions as in our judgment are absolutely decisive of the question necessarily involved.

If the note in suit did not become due absolutely for all purposes on the failure of the payment of the first note at the end of two years then the court erred in refusing plaintiff's fourth instruction and in giving for defendant this second instruction, and this case must be reversed. Or if the extension granted on the two year note did not operate as a matter of law to release the maker and first grantee of liability on both notes, then error was made by the court in giving the same, and in refusing instruction numbered 4 for plaintiff. The plaintiff might have brought suit on the first note at its maturity against any and all of the defendants for a personal judgment. She might have begun her suit to foreclose the equity of redemption or begun her suit for the possession of the premises on condition broken by the nonpayment of the two year note, all remedies concurrent and independent, to which plaintiff could have resorted at that time for the enforcement of her right. She was not bound to request a sale of the mortgage property. She was not compelled to institute proceedings to foreclose her lien. She was not required to institute suit at once for a personal judgment to maintain all her rights and claims

against the defendant and all of them.  The liability of each of the defendants on that note was absolutely unaffected and uncontrolled by the other note due in three years, or by the deed of trust securing each and both.  That note was due and the liability of defendants thereon resulted from the face provisions of the note itself fixing the time of its payment.

If we now for the sake of this case treat defendants as sureties as to both notes, and the notes and deed of trust as one instrument and the provisions of the deed of trust dominating the time for payment of the notes, defendants were still liable at the maturity of the first note on both notes named in the deed of trust by reason of their contract of assumption made with their respective grantors for the benefit of this plaintiff at the time of their respective purchases.  If sureties, and if liable then, that liability would continue until released by contract with plaintiff, or by operation of law as a result of plaintiff's conduct.

Plaintiff made a contract to extend the time of payment on the first note by agreement with Canine at its maturity for three months without any valuable consideration therefor, and, after its expiration, the time of payment of the unpaid balance was again extended for three months, this time for a valuable consideration.  By this last contract of extension with Canine, without the knowledge and consent of these defendants (if they are to be treated as sureties) plaintiff altered the terms of the contract so as to relieve the securities from personal liability on that note.  But she made no contract, as appears from the testimony, regarding the three year note now in suit (and not then due on its face for nine months), and we are unable to find anything in the deed of trust, or the three year note, that would authorize the inference that by reason of the extension of the time of the first note, that the payment of the three

year note was also extended for a like or any other period of time, if we were disposed to consider the deed of trust and the notes as one instrument, and to be construed together as such.

We are unable to conceive by the operation of what principle of law the trial court directed in its instructions a finding for defendants on the note in suit, "if the jury should believe extension had been granted by plaintiff to Canine, on either or both of the notes named in the deed of trust." That a surety may be discharged, the creditor must do some act by which he deprives himself of the right of proceeding at law to the collection of the security obligation. The act or agreement must be such as to "operate as an estoppel on the creditor sufficient to prevent him from bringing an action before the expiration of the extended time." *Headlee v. Jones*, 43 Mo. 235.

The note in suit was not due when the extension was granted on the two year note; but if you say it was due by the terms of the deed of trust, then the answer is, that plaintiff never estopped herself from suing on it by contract with Canine for she did not think or treat it as due, and as a result made no contract with reference to it. Neither plaintiff nor defendants were deprived of any remedy against anyone on the three year note in suit by the extension of the two year note.

It might also be said that in this case the extension granted on the two year note resulted in no injury to the defendants in any wise, but all to their good, for they were thereby released from personal liability, if we treat them as sureties merely. Defendants have no honest claim for a release in this case upon either legal or equitable grounds on account of the proceeds from the sale of the mortgaged property being applied to the satisfaction of the two year note. By repeated

adjudications in this state, the two year note was a first charge on the lands named in the deed of trust by reason of its prior maturity, and no court or authority, so far as we have been able to ascertain, has ever held or claimed that an extension granted by the holder of a note to a subsequent purchaser of the mortgaged property ever lost to the holder the benefit of the collateral; or but that the notes would be first satisfied out of the proceeds of the land in the event of a trustee's sale or foreclosure of the deed of trust, as was done in this case, regardless of the question whether individual sureties had been relieved from liability or not by the action of the holder of the notes.

If it be conceded, as contended by respondents, that notes and deeds of trust securing them form but one and the same transaction and must be construed together, and that when taken together the note in suit became due at an earlier day than three years after its execution (as indicated on its face), by the happening of the contingency of the nonpayment of the two year note at maturity absolutely without any action on the part of the holder of the notes (a proposition which we deny), still the three year note was not thereby extended. Nor was it by the contract of plaintiff with Canine, as appears from the testimony.   For the court to declare that the extension of one note had the effect to extend the other was to declare the effect of a contract never made by plaintiff with Canine, and never contemplated or thought of so far as the testimony discloses.

Again, if the doctrine that all instruments evidencing a transaction must be construed together does not apply to the case of negotiable promissory notes secured by deed of trust, then instruction number 2 given for defendant was erroneous.   If the doctrine does apply then it was not a question to be submitted to the jury for their determination and ascertainment,

but should have been declared so by the court. There has arisen some confusion in the decisions of our court upon the question as to how these instruments, executed as the notes and deeds of trust in this case, are to be construed, but we think the great weight of authority and those most consonant with reason and the best rules of interpretation, support the proposition that the notes are to be considered each as a separate and complete contract within itself, uncontrolled in its terms by anything contained in the deed of trust; ' and that it was error in the trial court to submit to the jury that question for their determination.

The notes and deed of trust as executed in this case can not be said to constitute one and the same contract so far as affects the question as to the time of the maturity for general purposes of the note in suit. In many ways the notes and deed of trust are to be treated as separate papers. They are separate instruments in form, and executed for different purposes, to different parties, affecting different subjects—one an absolute promise on the part of the maker to pay a given sum of money in a given time and subject to enforcement, independent of, and it might be said in disregard of, the other; the other is a conditional instrument, that may or may not be executed for any purpose and is rendered lifeless by the execution of the promise of the former. The money obligated to be paid by the notes is the substance and the life of the transaction, the deed of trust securing it is but an incident. The note is governed by the law merchant, the deed of trust by the law affecting real property.

We do not controvert the proposition that when instruments are executed at the same time, for the same purpose, and in the course of the same transaction, they are to be considered as one instrument, and are to be read and construed together as such, but we think

the doctrine can not be said to apply to instruments of the kind and character now under consideration, so that the conditional provisions of one shall diminish, control, and destroy the absolute provisions of the other. If in the case at hand that rule is to apply, then the positive, certain, and unmistakable time fixed for the maturity of the note in suit (and that too an essential prerequisite to give the instrument the designation and virtue of a note), is to be destroyed by this collateral instrument going merely as an incident to the note. In other words, we have this deed of trust given as a collateral security for the note operating not along with it to secure its fulfillment, but dictating the time of its payment, in such a way, as under the circumstances of the case, according to defendant's contention, to result in the defeat and destruction of the note itself, the essence, the life of the contract, the thing without which the deed of trust stands for and represents nothing.

If the note in suit and deed of trust securing same are to be considered as one entire contract and used together as such, as if the promises of one and the provisions of the other were all embodied in one writing, what would become of the instrument we now call the note with all its essential characteristic qualities; in fact all that entitled it to that designation? Read the two instruments together as one and you have no note, with which you invoke the rules governing such instruments, to defeat the obligation of the defendants thereunder in this case.

The deed of trust securing the note in suit, provides that "if there is a default in the payment of the debt or any part thereof or the interest due thereon when the same or any part thereof becomes due and payable according to the true tenor, date, and effect of said notes, then the whole shall become due and pay-

able and the trustee, at the request of the legal holder of said notes, may proceed to sell the property," etc. How could the holder of one of the notes transferred to him by indorsement of an innocent purchaser for value shortly after its signing tell when his note would mature, if he can not look to its face for his information? If this rule is to apply, what becomes of that "courier that travels without luggage, whose countenance is its passport?" If the notes and deed of trust securing same are to be read together and treated as one instrument for all purposes, then your courier with its face as its passport is a myth, and the whole fabric built up by the law merchant in its favor and ingrafted now by legislative enactment onto, and as a part of, the commercial law of every civilized country of the globe, is inoperative in the state of Missouri.

We think the cases of *Brownlee v. Arnold*, 60 Mo. 79, and *Noell v. Gaines*, 68 Mo. 649, so much relied on by respondent, are in conflict with repeated adjudications of this court made before and since the rendition of those decisions, in so far as they announce the doctrine that the time for the maturity of the notes when same are secured by deed of trust is to be dominated by the provisions of the deed of trust, and not determined by the face of the notes themselves.

We are aware that our court has frequently made use of the expression found in the deed of trust before them for consideration, and have declared " that the notes secured by *them* have *matured* by reason of the happening of the condition specified therein," before the notes upon their face were in fact matured, but by an examination of all cases where these expressions have been found, except in the ones just cited, the term is applied only in a limited sense, and not in the sense that the note or notes have matured for all or general purposes. Maturity in the sense in which these

terms are used is, that they are ripe for the purpose of receiving the application of the proceeds from the sale of the collateral security, by reason of the provision of the deed of trust itself, as well as from the necessity of the situation that requires of a trustee the disposition of the trust in his hand in such a manner that its fruit is not permitted to waste or perish in his possession.

The judgment of the trial court will be reversed and the cause remanded for new trial. BRACE, C. J., BARCLAY and MACFARLANE, JJ., concur.

BARCLAY and MACFARLANE, JJ., concur in the judgment announced, but are of opinion that the cause should be transferred to the court *in banc* because the necessary effect of the learned opinion of Judge ROBINSON is to disapprove and overrule the decision in *Noell v. Gaines* (1878), 68 Mo. 649.