GRAND ISLAND SAVINGS & LOAN ASSOCIATION, AP-
PELLEE, V. JULIETTE MOORE ET AL., IMPLEADED
WITH CHARLES WASMER, APPELLANT.

FILED MAY 15, 1894.    No. 5092.

1. **Transcript for Review.** The transcript of a record filed in this court for the purpose of appeal imports absolute verity, and in considering the appeal must be treated as the sole and exclusive evidence of the facts.

2. **Mortgage Foreclosure:** DEFICIENCY JUDGMENT: PLEADING. It seems that under a prayer for the foreclosure of a mortgage and for general relief a personal judgment may be allowed for a deficiency.

3. ——: ——: ——: AMENDMENT. Where the prayer is in such form, and after confirmation of sale the plaintiff files a motion praying for a deficiency judgment, serving notice thereof upon the defendant, such motion will be treated as an amendment of the prayer of the petition.

4. **Mortgages:** DEFICIENCY JUDGMENTS. A judgment for a deficiency may be rendered against one who purchased the mortgaged property after the mortgage was made and in his purchase assumed and agreed to pay the mortgage debt. *Cooper v. Foss,* 15 Neb., 515, followed.

5. ——: ——. A mortgagee will not be precluded from obtaining a judgment for a deficiency upon the ground that he knowingly procured too great an amount to be found due upon the mort-

gage when, in the proceedings for the deficiency judgment, the finding of the amount due in the decree is mutually disregarded and a new accounting had.

6. **Pledges.** In the absence of special equities a pledgee of personal property will not be required to exhaust his security before enforcing his personal remedy upon the debt.

7. ———: Provision to Declare Debt Due: Notes. A note and a mortgage securing it, made contemporaneously, are to be construed together. Therefore, where a note is payable on or before a date named and the mortgage contains a provision that in certain contingencies, prior to that date, the mortgagee may elect to declare the whole amount due, *held*, that such provision in the mortgage authorizes the mortgagee upon the happening of such contingencies to proceed not only to foreclose the mortgage but also to enforce the personal liability upon the note.

Appeal from the district court of Hall county. Heard below before Harrison, J.

*Thummel & Platt,* for appellant.

*Abbott & Caldwell, contra.*

Irvine, C.

This is an appeal from a deficiency judgment rendered against the appellant Wasmer. The transcript is very incomplete as to the proceedings prior to the motion for judgment. Counsel have stated many facts in the briefs as to which the record is entirely silent. It appears that in November, 1890, the plaintiff began the action against Juliette Moore, George H. Moore, Charles Wasmer, and the wife of Wasmer, to foreclose a mortgage. made by the Moores to the plaintiff. In addition to the usual averments it was charged that Wasmer had purchased the mortgaged premises since the giving of the mortgage and in his purchase thereof assumed, agreed to pay, and became responsible for the payment of the mortgage debt. Neither the summons or return, subsequent pleadings, nor decree appears in the transcript. We must, therefore,

presume that jurisdiction was acquired and that the decree was of such a character as to warrant the subsequent proceedings. The transcript does contain an order of sale and return, an order of confirmation, and for a deed. Subsequently to the order of confirmation, the plaintiff filed a paper styled "Motion for Deficiency Judgment," as follows: "Now comes the plaintiff and calls attention to the fact that the decree and finding of the court, together with the officer's return, shows that there is still a large amount of the sum found due unpaid after applying the entire proceeds of the sale of the mortgaged property, to-wit, $1,137.58, with interest thereon at ten per cent from the 14th day of March, 1891, the date of said sale, which amount is still due to the plaintiff and unpaid. Plaintiff therefore prays judgment and execution against the defendant Charles Wasmer for said sum with interest and costs." Thereafter Wasmer filed a paper styled an "Answer," reciting that he had been served with notice to show cause, if any, why judgment should not be rendered against him for the deficiency, and for such cause averring, first, that no proper petition was filed in the original action; second, that the petition did not pray for a deficiency judgment; third, that the petition did not state a cause of action against Wasmer; fourth, that there was a defect of parties defendant; fifth, that no service had been had upon the Moores; sixth, because the plaintiff made proof of more than was due, well knowing that Wasmer was entitled to a large credit and the plaintiff holding in its possession stock in the plaintiff corporation as security for what remained due; seventh, that the proceeding was premature and the note not due. The fourth and fifth of these objections may be dismissed with the statement that the record fails absolutely to show any facts upon which they could be based. We shall take up the other objections in their order in connection with the arguments upon which they are founded.

1. The first objection is based upon the proposition that the

petition in the case was not filed in the district court. It would be inferred from the briefs that the clerk neglected to place a filing mark upon the petition, but noted the filing upon a wrapper in which it was contained. The point is unimportant, however, because the record recites distinctly "that on the 8th day of November, 1890, there was filed in the office of the clerk of the district court of Hall county a petition in the words and figures following." The record is absolutely conclusive upon this point.

2. The second objection is based upon the failure of the petition to pray for a deficiency judgment. The prayer was "for a finding of the amount due on said claim and for a decree of foreclosure, an order of sale of the said property to satisfy the said claim, and for such other and further relief as is just and equitable." Whether a deficiency judgment can be allowed under a prayer for general relief is a question not free from doubt, and its solution is rendered more difficult, rather than aided, by such authorities as we have been able to find. It would seem that under the general rule that a prayer for general relief permits the allowance of any relief applicable to the case and not inconsistent with the particular relief demanded, such a prayer would be sufficient to authorize the rendition of a judgment for the deficiency. The courts have, however, exhibited a tendency to depart from this general rule in such cases, but their decisions are largely based upon statutes more or less differing from those of this state. Counsel contend that the case of *Brownlee v. Davidson*, 28 Neb., 785, implies that no special prayer for a deficiency judgment is necessary. We cannot see in that case any such implication. On the contrary it does appear clearly from that case that at some stage of the proceedings the plaintiff must ask for a deficiency judgment before error can be predicated upon failure to allow it. This is the only authority cited in the briefs. We have, however, pursued the investigation somewhat further.

48

In *Giddings v. Barney*, 31 O. St., 80, under a similar prayer, the court discussed a statute which it was claimed permitted a mortgagee in one action to foreclose his mortgage and obtain a personal judgment upon the debt. It was held that the personal judgment could not be allowed under a prayer similar to that in the case under consideration, but the court disclaimed the intention to deny the power of awarding execution for a balance due after the property was exhausted. The inference is that such relief could be had.

In *Foote v. Sprague*, 13 Kan., 155, the petition asked for a foreclosure and sale, and that execution should be issued for the balance. A personal judgment was rendered. The supreme court held that where the prayer was no more defective than in that case it might be amended at any time, and upon petition in error would be considered as amended.

In Wisconsin the statute permits a deficiency judgment only where it is demanded. In *Ollinger v. Liddle*, 55 Wis., 621, a prayer for execution for any balance was held sufficient to meet the requirement of the statute.

In Kentucky, under a prayer for foreclosure and general relief, it was held in *Hansford v. Holdam*, 14 Bush [Ky.], 210, that the rendition of a deficiency judgment was erroneous where the defendant made no defense to the action; but this was because a statute provided that if no defense be made the plaintiff cannot have judgment for any relief not specifically demanded. This principle would seem quite clear.

In New York the statute is similar to that of Kentucky, and the cases in that state usually cited as holding that a special prayer is necessary are based upon the statute, and intimate that where a defense is made the rule would be different. (*Simonson v. Blake*, 20 How. Pr. [N. Y.], 484; *Peck v. New York & N. J. R. Co.*, 85 N. Y., 246.)

The result of these cases seems about as follows: In Ohio we have a dictum that the general prayer is sufficient;

in Wisconsin, a liberal construction given to a special prayer to make it conform with the statute; in Kansas, an implication that a special prayer is necessary, but a defect- ive prayer treated as amended so as to supply the defect; in New York and Kentucky, an inference that the general prayer is sufficient where the defendant, by making a de- fense, has deprived himself of the protection of a statute demanding a different rule.  We have not in this state any statute similar to those of Wisconsin, New York, or Ken- tucky.  The protection afforded defendants in default by those statutes is partially given here by section 64 of the Code of Civil Procedure, providing that in an action for the recovery of money only there shall be indorsed on the writ the amount for which judgment will be taken, if the defendant fail to answer, and that if the defendant fail to appear, judgment shall not be taken for a larger amount and the costs.  In *Jones v. Null*, 9 Neb., 57, it was held that a suit to foreclose a mortgage was not an action for the recovery of money only.  Still, we are not required to de- cide what rights the defendant would have on failure to appear in such a case if there was no indorsement upon the writ.  The record contains neither the process, the answer, nor the decree.  If the appearance of defendant was nec- essary to give the court power to act, it must be presumed that there was such appearance.  It would seem, therefore, that the prayer was sufficient to justify the rendition of the deficiency judgment, but if not, then we are quite clear that it might be amended with notice to the defendant so as to ask for the judgment, and the motion for the judgment, especially where it is couched in such language as it was here, should be treated as an amendment.  The record shows affirmatively that notice of the motion was served upon the defendant and that he appeared in response thereto. The amendment was also in time.  It came before the judg- ment was rendered, and no attempt was made to take ad- vantage of any finding affecting the right to the judgment

which may have been contained in the original decree. The right to the judgment was tried upon its merits, subsequent to the motion, and after defendant's appearance to the motion.

3. The petition does state a cause of action against Wasmer. It avers that Wasmer became a purchaser of the property, in his purchase assuming, agreeing to pay, and becoming responsible for the payment of the debt alleged. These averments bring the case within the rule stated in *Cooper v. Foss*, 15 Neb., 515.

4. The note to secure which the mortgage was made was for $1,000, with interest at ten per cent per annum from date. It bore date March 23, 1886. It was stipulated upon the hearing that the amount found due in the decree was $1,564. The property sold for $524. The plaintiff is a building and loan association, apparently operating under chapter 16, sections 145 to 148r, Compiled Statutes. It appeared that when the Moores borrowed the money $550 was at once repaid to the association for stock; that the stock was pledged to the association as additional security; that subsequently other payments had been made. The question of the constitutionality of the statutes referred to is not argued in this case and we will not consider it. What the defendant claims we understand to be, first, that making proof of the face of the note with interest, without allowing credit for the moneys repaid the association, amounted to a fraud which vitiated the decree; and, secondly, that the association holding the stock should be required to exhaust it before enforcing Wasmer's personal liability. Upon the first point it is sufficient to say that in the proceedings resulting in the deficiency judgment there was a new accounting regardless of that had upon the foreclosure, and Wasmer thereby obtained all the relief to which he was entitled because of the excessive finding in the decree. The property did not sell for enough to pay what was justly due, so that taking that fact in connection

with the fact that the finding in the supplementary proceeding was based upon a new accounting, Wasmer was in nowise prejudiced.  There is some little conflict in the evidence as to the credits, but we think the evidence clearly preponderates in favor of the finding of the trial court.  Upon the second point, we are not able to ascertain certainly from the record whether the credits were made upon the basis of a surrender of the stock or as absolute credits.  If upon the former, it amounted to exhausting the security afforded by the stock; if upon the latter, the principle would apply that the holder of a pledge may pursue his personal remedy if he so elect, regardless of the pledge; and the debtor, in the absence of special circumstances, cannot require the security to be first resorted to.

5.  The last objection made is that the proceeding was premature.  The note was made payable on or before March 23, 1892, with the following provision: "The payer has the option of paying the interest as above at the end of each year or of having it added to the principal to draw thereafter the same rate of interest."  The mortgage, as alleged in the petition, provided that if the mortgagors should fail to pay the money when due, or to pay taxes or insurance, or to pay the dues and fees on the stock as they became due, then the plaintiff might elect to pay the same and declare the whole amount due and payable at once.  The default alleged was the failure to pay dues and fees upon the stock, and it must be presumed that the court found upon proper evidence that there had been such default.  The writer was at first of the impression that where the note is absolute and the mortgage contains such a provision, the provision should be restricted to the remedy by foreclosure, rendering the debt due for the purpose of foreclosure only, but leaving the maturity of the debt for the purpose of enforcing the personal liability to be determined by the note itself.  The adjudications do not, however, bear out this view.  In this state it has been determined that in de-

ciding such questions the note and mortgage should be construed together. (*Fletcher v. Daugherty*, 13 Neb., 224; *Lantry v. French*, 33 Neb., 524.) This principle alone would not be decisive of the question, for the reason that, construing the two instruments together, the fact that the stipulation referred to was contained in the mortgage and not in the note might be taken as an evidence of the intention of the parties to restrict the effect of the stipulation to the enforcement of the mortgage. *Buchanan v. Berkshire Life Ins. Co.*, 96 Ind., 510, was a case much like that before us. A personal judgment had been rendered in the foreclosure case and it was there held that the provision in the mortgage should be construed in connection with the note, and that a failure to pay interest coupons entitled the mortgagee to a personal judgment for the whole debt. *First Nat. Bank of Sturgis v. Peck*, 8 Kan. 660, was a suit upon notes under similar conditions. The court there held, in an opinion by Brewer, J., that the notes and mortgage were to be construed together, that all the notes became due upon the failure to pay one, and that the statute of limitations ran against all from that time. In *Gregory v. Marks*, 8 Biss. [U. S.], 44, Judge Blodgett held on a similar question that such a clause in the mortgage permitted the creditor to pursue the personal remedy upon the notes, although the notes contained no such provision. In his opinion he states that he was for some time in doubt because of a dictum in a Missouri case upon the subject, to the effect that the clause in the trust deed was put there only for the purpose of marshalling the security and not for the purpose of maturing the notes. He does not refer to the Missouri case by title or otherwise. Judge Blodgett's decision was rendered in 1877, and in 1878 the supreme court of Missouri held in *Noell v. Gaines*, 68 Mo., 649, where two notes by their terms matured at different dates, but a trust deed securing them provided that if the maker should fail to pay the debt or interest when the

same became due, then both should become due and payable, that an indorser of the second note was discharged by failure to make demand and give notice of dishonor of the second note at the time of the holder's election to take advantage of the provision in the trust deed. In the opinion a dictum in *Mason v. Barnard*, 36 Mo., 384, was disapproved. The latter was probably the case to which Judge Blodgett referred. We think, therefore, that the mortgagee had the right, upon default in payment of dues upon the stock, to elect to declare the whole debt due, not only for the purpose of foreclosing, but also for the purpose of enforcing the personal liability.

JUDGMENT AFFIRMED.

HARRISON, J., took no part in the decision.